UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARGARET BASCIK,

       Plaintiff(s),

v.

HURON VALLEY HOSPITAL, INC.,

       Defendant(s).

_____/

Case No. 06-11847

Honorable Nancy G. Edmunds

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [25]**

This matter came before the Court on Defendant's motion for summary judgment, filed on October 27, 2006.  Plaintiff Margaret Bascik brought suit against Defendant alleging (1) age discrimination under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. L. §§ 37.2101 *et seq.*, and (2) violations of the Family Medical Leave Act ("FMLA") for interference and retaliation, 29 U.S.C. §§ 2601 *et seq.*  The case was originally filed in state court, but was removed to this Court on April 19, 2006.

In support of its motion for summary judgment on Plaintiff's ELCRA claim, Defendant argues that (1) Plaintiff is unable to show direct evidence of age discrimination, and, alternatively, (2) she is unable to show circumstantial evidence of age discrimination because (i) Plaintiff was not qualified for the position, and (ii) she has not shown that Defendant's legitimate justification was pretextual.  As to Plaintiff's FMLA claim, Defendant asserts that (1) she was not eligible for FMLA leave because she did not give proper notice, (2) her interference claim fails due to her inability to show that Defendant's legitimate

1

justification was pretextual, and (3) her retaliation claim fails for a lack of causation between her act of requesting leave and her termination.  For the reasons set forth below, the Court GRANTS Defendant Huron Valley's motion for summary judgment and this case is DISMISSED.

## I. FACTS

Plaintiff worked as a telephone switchboard operator for Defendant for a total of sixteen years.  (Pl.'s Resp. at 1-2.)  First, from 1986 until 1992, at which time she moved to Florida, and then again from 1995 until her eventual termination in April 2005.  Plaintiff was 55 at the time she first began work for Defendant, and 65 at the commencement of her second stint of employment.  The position required Plaintiff to answer incoming calls, contact members of hospital staff, and monitor various alarm systems.  (Pl.'s Resp. at 1.)

Plaintiff received positive reviews from supervisors on a consistent basis through the 2004 calendar year.  (Pl.'s Resp. at 1-2.)  On January 24, 2005, however, an anonymous caller contacted Defendant's confidential hotline and reported that Plaintiff "sleeps [on the job] every night," "is a poor operator and she mixes up the calls," as well as "comes in looking like a bum, urinates in the chairs we have to sit in, and she smells so bad, it's hard to sit next to her."  (Pl.'s Resp., Ex. 5.)  Shortly thereafter, Plaintiff's immediate supervisor, Linda Rogers, contacted Plaintiff to make her aware of the call, as sleeping on the job is a major infraction of Defendant's employment policies.  Rogers admits that she said something to the effect of "you can retire gracefully or there will be an investigation."  (Pl.'s Resp. at 3; Rogers Dep., Ex. 3 at 86-87, hereinafter, the "Retire Gracefully Statement" or the "Statement.")  The parties dispute the intention of the

2

Statement, with Plaintiff claiming that it was a threat to get her to retire, while Rogers maintains that she was simply giving Plaintiff an easy way out if Plaintiff believed the allegations were true and did not want her name dragged "through the mud" as a result of an investigation.[1]

Plaintiff told Rogers that the allegations were untrue, but Rogers' subsequent investigation revealed sufficient evidence from a number of Defendant's other employees to, in Rogers' mind, corroborate the allegations that Plaintiff slept on the job. (Def.'s Mot. for Summ. J., Ex. 16.)  As a result, Rogers issued Plaintiff a Final Warning on February 11, 2005.  Plaintiff appealed the decision to Rogers' supervisor, Bill Lantzy, and he reduced this to a 3rd Written Warning due to Plaintiff's long-term employment with Defendant that was unblemished by other disciplinary infractions.  (Def.'s Mot. for Summ. J. at 9, Ex. 21.)

Defendant then claims that several incidents occurred over the next two months when Plaintiff was unable to perform the duties of her position, and patient lives were potentially endangered.  On March 12, 2005, the hospital's Administrative Supervisor,[2] Janet Erickson, observed that Plaintiff failed to properly page an operating room crew by dialing the wrong phone numbers and taking incoming non-emergency calls when

---

[1]Plaintiff denies that the statement was made verbally, and insists that she received a letter with that statement as its heading.  (Bascik Dep., Def.'s Mot. for Summ. J., Ex. 1 at 95.)  As of October 19, 2006, Plaintiff was unable to locate a copy of this alleged letter.  (Def.'s Mot. for Summ. J. at 8, n.7.)  Since Rogers admits that she made the statement, however, the Court views any dispute over the form of the statement as irrelevant to the resolution of this motion.

[2]This individual "is the highest-ranking employee in the Hospital during the night shift and is responsible for oversight of the facility."  (Def.'s Mot. for Summ. J. at 7, n.5.)

3

she should have been focused on reaching the necessary crew members.  (Def.'s Mot. for Summ. J. at 9-10.)  Then, on April 3, 2005, Rogers conducted a planned observation of Plaintiff during her shift, and noted that it took Plaintiff six times to dial the proper number for Defendant's alarm company, even though the correct digits were written on a paper sitting in front of her.  (Def.'s Mot. for Summ. J. at 11.)  Later in that same shift, Erickson stated that Plaintiff improperly paged a Code Blue emergency, resulting in some of the paged employees not knowing which section of the hospital to report to for the emergency.  (*Id.*)  Plaintiff denies that she ever slept on the job or had any trouble performing her duties in any of the incidents described by Defendant. (Pl.'s Resp. at 5.) At oral argument, however, Plaintiff admitted that it took her six attempts to dial the correct number for the alarm company, but asserted that Rogers' observation made her nervous.

Erickson verbally reported the Code Blue incident to Rogers on April 5, 2005, and Rogers claims that she made the decision to terminate Plaintiff at that time, but needed Lantzy and Kathy Bechtold of Defendant's Human Resources ("HR") department to approve of the action. (Def.'s Mot. for Summ. J. at 13.)  In an April 6, 2005 email to Lantzy and Bechtold, Rogers described the latest incident and opined that Plaintiff "no longer can do the job."  (Def.'s Mot. for Summ. J., Ex. 27.)  Bechtold responded, in part, that "Margaret needs to get off the midnight shift as soon as possible. Please have the Admin Supervisor put this incident in writing and then we can talk about terming her." (*Id.*)  Rogers, Lantzy and Bechtold met on April 11, 2005, and made the final decision to terminate Plaintiff at that meeting.  (Def.'s Mot. for Summ. J., Ex. 25 at 5.)  As Plaintiff did not come in for a scheduled meeting with Rogers the next day to discuss the

4

termination, Defendant notified her by certified mail, via a letter dated April 13, 2005. (Def.'s Mot. for Summ. J. at 14; Ex. 29 at 3.)  The other operators that covered Plaintiff's shifts following her termination ranged in age from 48 to 55, and the woman eventually hired to replace Plaintiff was 37 at the time.  All were approximately 20-30 years younger than Plaintiff,[3] who was 76 when terminated.  (Pl.'s Resp. at 6.)

During the periods described above, Defendant also had Plaintiff's eyesight and hearing tested, and Plaintiff found out that she had cataracts that required surgery.  On April 7, 2005, Plaintiff contacted Kari McCleese in Defendant's HR department to request a week of vacation time for the surgery, but McCleese indiated that applying for FMLA leave was the appropriate approach.  Defendant then gave the FMLA paperwork to another switchboard operator for delivery to Plaintiff, as Rogers had already removed Plaintiff from the schedule at that time.

Rogers testified that Bechtold told her not to sign any FMLA forms that might come in, as Defendant considered Plaintiff to be a terminated employee by that point.  (Pl.'s Resp. at 6.)  Rogers does not recall the date of this conversation with Bechtold, nor whether Plaintiff actually submitted the FMLA paperwork.  McCleese testified that she called Plaintiff twice to follow up on why no paperwork had been received, and also stated that she never received anything back from Plaintiff.  (McCleese Aff., Def.'s Mot. for Summ. J., Ex. 28 at 2.)

## II.  STANDARD OF REVIEW - MOTION FOR SUMMARY JUDGMENT

---

[3]Plaintiff's Response indicates a "ten (10) to fifteen (15)" year age difference, but this appears to be a simple mathematical error, as Defendant does not contest Plaintiff's age, nor those of the other switchboard operators.

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III. ANALYSIS

### A. Age Discrimination Under Michigan's Elliott-Larsen Civil Rights Act

Plaintiff's first claim alleges that Defendant unlawfully discriminated against her by

6

terminating her employment because of her age, in violation of Mich. Comp. L. §
37.2202(1)(a).  Michigan courts apply analogous federal law when considering claims
for age discrimination under the ELCRA.  *Featherly v. Teledyne Indus., Inc.*, 486
N.W.2d 361, 364 (Mich. Ct. App. 1992).  An ELCRA plaintiff may survive the
defendant's motion for summary judgment in one of two ways.  First, the plaintiff can
produce direct evidence of discrmination.  *Hazle v. Ford Motor Co.*, 628 N.W.2d 515,
520 (Mich. 2001).  Alternatively, the plaintiff can rely upon circumstantial evidence of
discrimination under the familiar burden-shifting analysis outlined in *McDonnell Douglas
Corp. v. Green*, 411 U.S. 792 (1973) by raising a prima facie case of discrimination that
is sufficient for a trier of fact to infer discrimination.  Once the plaintiff meets this burden,
the burden of production shifts to the defendant to introduce evidence of a non-
discriminatory justification for the adverse employment action that would rebut the
plaintiff's prima facie case.  Once this second burden is met, the burden of production
shifts back to the plaintiff to show that the defendant's stated reason is pretext for
unlawful discrimination.  *Hazle*, 628 N.W.2d at 521-22.

### 1.  Plaintiff has not raised direct evidence of discrimination

"Direct evidence is evidence that proves the existence of a fact without requiring
any inferences."  *Rowan v. Lockheed Martin Energy Systems, Inc*. 360 F.3d 544, 548
(6th Cir. 2004).  Plaintiff's claim that direct evidence exists due to Rogers' admitted
Retire Gracefully Statement following the anonymous hotline call.[4]  In support, Plaintiff

---

[4]Defendant argues that there is insufficient evidence of the Retire Gracefully
Statement because Plaintiff has been unable to produce the letter that she claims
contained the statement, as well as the fact that Plaintiff also relies on the hearsay
testimony of her niece to establish that Rogers made the statement.  Each of these

cites *DeBrow v. Century 21 Great Lakes, Inc.*, 620 N.W.2d 836, 838 (Mich. 2001),
where the Michigan Supreme Court held that a grant of summary judgment for the
defendant was improper when the plaintiff testified that his supervisor told him he was
"getting too old for this shit" during the conversation when the plaintiff learned he was
being terminated.  The court noted that this statement was subject to varying
interpretations, but stated that "any weighing of evidence is for the factfinder, not for this
Court in reviewing a grant of a motion for summary disposition." *Id.*  Viewed in a light
most favorable to the non-moving plaintiff, the statement could have been direct
evidence of age discrimination, so summary judgment was improper.

The Retire Gracefully Statement does not reach the same level of possible
interpretation that the one in *DeBrow* did, however.  Whether the Statement is
characterized as an ultimatum (Plaintiff's view) or merely shows concern for Plaintiff by
offering her a way out (as Defendant asserts), the fact remains that the only part of the
Statement that references Plaintiff's age is Rogers' use of the word retire.  The
Statement could have just as easily been "resign gracefully or there will be an
investigation," and without any further context from Rogers' other contemporaneous
comments that retire was used in reference to Plaintiff's age, this is insufficient to
constitute direct evidence of discrimination.

The instant case is also distinguishable from *DeBrow* in that the alleged evidence
of discrimination here was not made at the time that Plaintiff was terminated, as that
was also a key fact that the *DeBrow* court considered in its holding.  620 N.W.2d at 838.

arguments is irrelevant, as Rogers herself admits that she said "[w]ords to that effect."
(Rogers Dep., Def.'s Mot. for Summ. J., Ex. 3 at 87.)

8

Plaintiff's brief characterizes the Statement as part of Plaintiff's termination, because this action "stemmed entirely from the anonymous call to the DMC Hotline, and, correspondingly, the 'retire gracefully' statement itself." (Pl.'s Resp. at 11.)  Since the actual decision to terminate Plaintiff occurred over two months beyond the Statement, however, this attempted connection is too tenuous for the Statement to constitute direct evidence of discrimination.  Therefore, Plaintiff must rely on circumstantial evidence to defeat Defendant's motion for summary judgment.

### 2.  Plaintiff does not have circumstantial evidence of age discrimination

"Circumstantial evidence . . . is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred."  *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc).  Plaintiff's first step in raising circumstantial evidence of discrimination is pleading a prima facie case of unlawful age discrimination under the ELCRA.  This requires showing that: "(1) she was a member of the protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a younger person."  *Lytle v. Malady*, 579 N.W.2d 906, 916 (Mich. 1998).  Defendant's only challenge is to the third element, as it claims Plaintiff was unqualified for the position because of the incidents where she was observed being unable to properly place calls and pages in emergency situations.  In support of this proposition, Defendant cites *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990), where the court held that the plaintiff did not state a prima facie case of age discrimination because he "acknowledge[d] that his supervisors were dissatisfied with his job performance in the summer of 1986 when he was discharged."  Since the

9

plaintiff conceded the point, there was no disputed issue of material fact in that case, and summary judgment was appropriate.

The fact that Plaintiff disputes the occurrence of the alleged incidents that gave rise to Defendant's conclusion that Plaintiff was unqualified for her position makes it possible that the Sixth Circuit's contrary holding in *Wexler* could apply here.  In *Wexler*, the district court concluded that the plaintiff did not state a prima facie case because the fact that sales were declining in the store that the plaintiff managed meant that he did not meet his employer's legitimate expectations for its store managers.  Thus, he was not qualified for the position.  *Id.* at 574.  In reversing, the Sixth Circuit noted that the plaintiff disputed this reasoning, giving his own explanation for the sales declines, and held that "a court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case. To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination."  *Id.* at 574.

Despite Plaintiff's numerous denials that the events happened as Defendant says they did, the Court is convinced that the holding in *McDonald* is applicable here, due to the fact that Plaintiff admits it took her six tries to place a call to Defendant's alarm company.  Nervous or not, neither party disputes the fact that a hospital operator who needs to take that many times to place an alarm call is not qualified for the position. Therefore, Plaintiff has not met her burden of stating a prima facie case of age discrimination, and this claim must be dismissed as a matter of law.

### B.  The Family Medical Leave Act

10

The FMLA provides eligible employees up to 12 weeks of leave in any 12 month
period for a number of health-related issues, including a "serious health condition." 29
U.S.C. § 2612(a)(1).  Once an individual is entitled to FMLA leave, it is unlawful for a
covered employer to interfere with the employee's exercise of FMLA rights or retaliate
against an employee for exercising those rights.  29 U.S.C. § 2615(a)(1) and (2).
Defendant does not dispute that Plaintiff's cataract surgery qualifies as a serious health
condition, or that it is an employer subject to the FMLA, but argues as a threshold
matter that Plaintiff did not provide sufficient notice of her intention to seek FMLA leave
for her to have rights under the FMLA.  Alternatively, Defendant argues that Plaintiff has
not stated a valid claim for interference with, or retaliation for, her exercise of FMLA
rights.

### 1.  Plaintiff gave sufficient notice of her right to FMLA leave

Under the FMLA regulations, "[a]n employee shall provide at least verbal notice
sufficient to make the employer aware that the employee needs FMLA-qualifying leave,
and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c).  Here,
Defendant admits that on April 7, 2005 Plaintiff told McCleese of Defendant's HR
department that she needed a week off for cataract surgery.  In fact, Defendant further
admits that McCleese told Plaintiff that FMLA leave was more appropriate than
Plaintiff's original request to take vacation time, and arranged to have another
switchboard operator take the requisite FMLA paperwork to Plaintiff.  (Def.'s Mot. for
Summ. J. at 13.)  With these admissions by Defendant, Plaintiff has met the minimal
requirements to establish that she gave Defendant sufficient notice of her right to FMLA
benefits.

11

### 2.  Plaintiff has not pled a prima facie case of FMLA interference

The elements of an interference claim under the FMLA are: (1) the plaintiff is an eligible employee, (2) the defendant is an employer, (3) the employee was entitled to leave under the FMLA, (4) the employee gave the employer notice of the intention to take leave, and (5) the employer denied the employee FMLA benefits to which they were entitled.  *Calvin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).  The fifth element is the only one at issue in this case.

The entitlement to FMLA rights is not absolute, as an employer does not interfere with an employee if the employer had another legitimate reason to terminate the employee that was unrelated to the exercise of FMLA rights.  *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006).  Although Plaintiff disputes the factual bases behind several of Defendant's performance-related issues, her admission that it took six attempts for her to call Defendant's alarm company provides the separate justification for her termination without violating the FMLA.  Thus, Plaintiff's FMLA interference claim does not survive Defendant's motion for summary judgment.[5]

### 3.  Plaintiff has not met her burden of production for an FMLA retaliation claim

The *McDonnell Douglas* burden shifting analysis described above in this Court's discussion of Plaintiff's ELCRA claims applies to FMLA retaliation claims as well.  *Edgar*, 443 F.3d at 508.  The particular elements of a prima facie case for this claim that

---

[5]As the failure to state a prima facie case of FMLA interference on its own is sufficient to dismiss this particular claim, the Court need not address Defendant's alternative argument regarding the timing of Plaintiff's request for FMLA leave and Rogers' alleged decision to terminate Plaintiff.

Plaintiff must prove are: "(1) she availed herself of a protected right under the FMLA by notifying [Defendant] of her intent to take leave, (2) she suffered an adverse employment action, and (3) that there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action." *Id.* Even assuming that Plaintiff has stated a prima facie case of FMLA retaliation, Defendant has met its shifted burden of stating a non-discriminatory justification for her termination by raising evidence that her performance was unacceptable.

Therefore, the burden of production returns to Plaintiff to show that Defendant's stated reason is pretext for unlawful retaliation under the FMLA. As Plaintiff has admitted that she was unable to call Defendant's alarm company, she has not met this threshold, and her FMLA retaliation claim also fails as a matter of law.

## IV. CONCLUSION

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders as follows:

Defendants' motion for summary judgment is GRANTED and this case is DISMISSED.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: January 18, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 18, 2007, by electronic and/or ordinary mail.

13